SCHRODER *v.* THE PALMER HARDWARE COMPANY.

1. Where, in an oral order given for the purchase of goods exceeding fifty dollars in value, the seller is instructed by the buyer to deliver them to a certain named person, who receives them without objection, and the goods are in fact such as were ordered and are

without any defect or deficiency whatever, they are to be deemed as received and accepted by the purchaser himself through his agent constituted for that purpose. An action for the price is not within the statute of frauds as embodied in section 1950 of the code.

2. The evidence being conflicting, and the jury by their verdict having indorsed the plaintiff's version and rejected that of the defendant ; and there being no material error in the charge of the court, and no error whatever in refusing to charge as requested, the denial of a new trial was correct.  *Judgment affirmed.*

January 11, 1892.

Contracts. Statute of frauds. Evidence. Charge of court. Before Judge HARDEN. City court of Savannah. July term, 1891.

The Palmer Hardware Company sued E. A. M. Schroder on an account for one cemetery railing, galvanizing the same, and cash paid for freight thereon, amounting to $403.54. The defendant pleaded the general issue, and the statute of frauds. The evidence for the plaintiff tended to show the following : The account sued on is correct according to agreement, and is unpaid. One Fennell, who had been in the habit of ordering things of the plaintiff for different parties who have lots in the cemetery, carried to the plaintiff's store a small piece of paper showing a diagram of Schroder's lot—so many feet, stating that he wanted three gates. This order being so large, Harry Palmer (representing the plaintiff) did not like to order it without some authority from Schroder. He went to the telephone and rang up George Schroder, and failing to get him, rang up the defendant and asked him about the railing ordered by Fennell. Defendant said, "It is all right; anything that Mr. Fennell orders is all right; put my name in the middle and my brothers' on each side on the other two gates." He further said, "When the goods come, deliver them to him and send the bill." There are three of the Schroder brothers. Thereupon Harry Palmer ordered the railing. No question regarding the

price was made by Schroder; he told Palmer that as soon as the railing came to "make out the bill and give it to Mr. Fennell, this is to be a cash transaction, and we will give him the money for the railing." The railing came and was delivered to Fennell, who took it to the cemetery and placed it near the lot of the Schroders. No objection was made as to the price until after it had been delivered. Harry Palmer was not asked the cost at all except by Fennell, who acted as Schroder's agent, and Schroder confirmed his order. The memorandum brought by Fennell contained no terms. Fennell was not the agent or employee of the plaintiff.

For the defendant the testimony tended to show the following: He made a contract for cemetery railing, but not with the plaintiff. When Palmer called him through the telephone, he said he did not know anything about the work, and that anything his brother George did would be all right. The contract was made with Fennell by George Schroder, for a price which would make the bill amount to over one hundred dollars less than the account sued on. The railing has never been accepted by the defendant. He has refused to pay for it on account of the price charged. It was hauled out to the cemetery without direction from any of the Schroders, who had already told Fennell that when it arrived they would haul it with their own team. The railing was of the kind contracted for, but the price charged was not the price at which Fennell agreed to furnish it.

The jury found for the plaintiff the amount sued for. The defendant moved for a new trial on the general grounds, and because of alleged errors in refusing to charge as requested, and in the charge as given. The instructions requested and refused are as follows:

(a) If you find that this suit is brought to recover the value of goods, wares or merchandise to the amount of

fifty dollars or more, and the contract for sale, if you find that there was any contract, was not in writing stating the terms of sale and signed by the defendant or some person lawfully authorized by him to do so, then such a contract would be void and you must find for the defendant, unless he accepted part of the goods and actually received the same, or unless he gave something in earnest to bind the bargain or in part payment. By something in earnest is meant some money, gift or token actually given by the purchaser and received by the seller to bind the bargain.

(b) Mere acceptance would not make such a contract good, nor would actual receipt only make such a contract good, but there must be *both* an acceptance *and* an actual receipt; that is to say, the seller must have delivered the goods into the custody of the purchaser with the intent of vesting possession in him, *and* the purchaser must *also* have actually received the goods and the possession of the same as owner; and such delivery and acceptance can only be proved by unequivocal acts independent of the proof of the contract.

(c) Acceptance, being an act which from its nature requires more deliberation and involves more consequences than a receipt, cannot be inferred before the buyer examined and inspected the goods, determined whether or not they corresponded with the goods contracted for, if you find any goods were contracted for; and so long as the buyer has the right to inspect the goods there can be no actual receipt to satisfy the statute or to make a contract good. If goods were sold by sample, it is not enough to show that goods were delivered and corresponded with sample, but it must *also* be proved that the buyer accepted the goods, and therefore, if you find that the goods in question were placed in the cemetery near the defendant's lot, and if you find that that was a delivery to him, but do not find that he ac-

cepted the goods by some unequivocal act, then your verdict must be for the defendant.

(*d*) The reason for the law which I have given you in charge is not only to prevent moral fraud, but is also for the purpose of guarding against the mistakes and misunderstandings of honest men, and it is for this reason that such contracts are required to be in writing signed by the party to be charged or his agent.

(*e*) And when a seller attempts to sell goods by means of a telephonic message, this law would apply most stringently against him, because of the greater chance of mistakes and misunderstanding.

(*f*) No contract is good or binding unless both parties have consented to the same terms; a misunderstanding by either party of any of the terms of a contract renders the contract incomplete. If a party offers goods at one price, and the seller agrees to the price named, but when the goods are delivered the seller asks a different price, the purchaser is not bound to receive the goods at all; he may reply, "I entered into no such agreement, this is not by contract, and when you present a different contract I refuse to accept it and claim a release from the contract made." If, therefore, you find that the defendant agreed to a contract with these plaintiffs for the purchase of certain goods of a certain description and for a certain price, if you find that these plaintiffs afterwards offered the goods on different terms, whether the difference consists in the cost per foot, cost of freight, or cost of galvanizing, or in any way varied the original contract, then the defendant had a perfect right to refuse to accept the goods or to pay for them; in such case the plaintiffs are at fault and have repudiated the contract, and the defendant is blameless, and you must find for the defendant.

The parts of the charge excepted to are: "If Mr. Fennell had not been authorized to represent this de-

fendant, if this defendant had not ratified what Mr. Fennell was doing, or authorized Mr. Palmer to fill the order of Mr. Fennell, the case ends there, because the case must stand or fall upon the question as to whether or not Mr. E. A. M. Schroder authorized Mr. Palmer to make this delivery of goods to him or to Mr. Fennell for him; because no matter what had passed between them, no matter whether authorized or not, this case stands upon this point and this alone: Mr. Fennell having given an order to the Palmer Hardware Co., which is not disputed by either side, was that order ratified or authorized or confirmed by Mr. E. A. M. Schroder, the defendant in this case?

"Of course if Mr. Schroder, the defendant, did authorize this or ratify it, that ends the case, and you will render a verdict against him. If he did not authorize it, that would end the case; but suppose that the circumstances be such as to justify the Palmer Hardware Company in believing in good faith that it was an order from E. A. M. Schroder, and that the circumstances justified it, and were circumstances attributable to the defendant, then the defendant would be liable, as much so as if he actually authorized it, because whenever any one does an act as Fennell did in this case, by which some other person is injured or might be injured, or is induced to act against his own interest, the one putting it in the power to cause or who is responsible for making the mistake is the one to bear the burden; so if it should appear that it was not the intention of Mr. E. A. M. Schroder to ratify this, but that he did say certain things which induced the Palmer Hardware Co. to believe that he ratified it, and that belief on their part was a natural and legitimate deduction from what was said, and what was done, then he would be bound just as though he had given absolute ratification. As far as it occurs to me, that covers this case.

"If there was a contract made by and with the consent of the defendant, the defendant would be bound.

"If there be a mistake, the one to whom the fault or mistake may be attributable is the one to bear the burden."

It was further assigned as error that the court charged in such a manner as to make it appear that if the defendant was liable at all, he was liable for the whole amount which might be due the plaintiff, when the evidence does not make it appear that the defendant was liable, if at all, for more than one third or a part, the railing being for the three brothers and the plaintiff so understanding. Also, that the judge by his charge to the jury excluded from their consideration the contentions of defendant, and gave no law in charge which would have been applicable if the jury should have found the facts to have been as testified to by defendant and witnesses for defendant.

The motion was overruled, and defendant excepted.

ERWIN, DUBIGNON & CHISHOLM and W. L. CLAY, for plaintiff in error.

SAUSSY & SAUSSY, *contra*.